REA *v.* SMITH.

(Division B.   March 11, 1935.)

[159 So. 845.   No. 31586.]

**C. A. Bratton,** of Oxford, for appellant.

**W. J. Evans,** of Calhoun City, and **Joe H. Ford,** of Houston, for appellee.

Argued orally by **C. A. Bratton**, for appellant.

**Ethridge, P. J.**, delivered the opinion of the court.

In the early part of the year 1927, J. D. Rea, a citizen of Calhoun county, died intestate, and shortly thereafter Earl Rea was appointed administrator of his estate. Among other assets of his estate was a stock of merchandise in the village of Sarepta in said county. On or about April 18, 1927, a petition was filed by Earl Rea, both as administrator and as an individual heir of J. D. Rea, for the sale of said stock of goods in bulk, and joined in said petition the widow of said J. D. Rea, his stepmother, and her minor children, alleging in said petition that the sale would be for the best interest of said estate as it would convert the stock of goods into money, which would be better than to attempt the continuation of the business.

The chancery court ordered the sale to be made, which was done, and the stock was ostensibly purchased by one Edwards for nine hundred dollars. About two months later Edwards transferred the stock of goods to Earl Rea for a purported consideration. An inventory showed the stock of goods to be worth more than two thousand dollars. Thereafter, the administrator, being in de-

fault in making a report of his administration, was cited to appear and show cause why he should not be removed as administrator, and, at said hearing, the widow of J. D. Rea testified that she did not consent to be joined in the petition for the sale of the stock of goods, and that the sale was for the purpose of defeating her rights, and that Earl Rea had promised, after the sale was ordered, to buy the stock of goods in for her, but that he procured Edwards to buy the stock for his own benefit, and no money passed, and that the sale was made, in fact, to the administrator for an inadequate consideration, and that he had, by misrepresentations, induced her not to appear and bid for herself, telling her he would procure the stock of goods for her at the least possible price, but after the sale he represented to her that he had been advised that he could not bid on it. The brother of the widow of the deceased testifed that he came down from his home near Blue Mountain for the purpose of bidding on the stock of goods, and that his sister told him that the appellant was going to bid the stock in for her, and, for that reason, he did not appear at the sale and bid as he intended to do.

It was proven that another merchant living at Sarepta bid eight hundred fifty dollars for the stock of goods. There was testimony that the stock of goods was worth at least five hundred seventy-five dollars more than the amount bid for it.

The widow also contested the account filed on the ground that the rent for the building had not been charged therein, and that it was worth ten dollars per month. There was other testimony placing the rent at from five to six dollars per month, and some as low as three to three dollars and fifty cents per month.

The appellant testified that he did not put the money paid him by Edwards into any bank or depository, and that he used it promptly in paying obligations, including some of his own, having been advised by some attorney

that it would be all right, so long as he had the money when he was called to pay it over.

The chancellor removed the appellant as administrator, and appointed Sam Smith, the appellee here, in his stead, directing said Earl Rea to file a final account charging himself with rent at six dollars and fifty cents per month, and also with an item of forty-five dollars collected from another party and not reported, and for an additional amount of five hundred seventy-five dollars on the value of the stock of goods sold at the above-mentioned sale.

It is argued that the court had approved the administrator's sale, and that term of court had been adjourned, and that the court did not have the power to change its approval of said sale, and that said judgment had become final and beyond the control of the court.

There was ample proof to justify the decree of the chancellor finding that the sale was procured through fraudulent and unauthorized representations, and that the goods at the sale were really purchased for the appellant rather than for Edwards, and it is familiar law that a court may set aside a judgment obtained by fraud.

We also think the court had full control over the administrator, and that, under section 1744, Code 1930, the heirs could challenge the final steps of the administrator until the expiration of two years after the final account was approved. The judgment, therefore, approving the sale was interlocutory rather than a final judgment.

We find no reversible error, and the decree of the court below will be affirmed.

Affirmed.